CHARLES A. BROWN AND BROTHER v. JOHN BARTON PAYNE, DIRECTOR GENERAL, SOUTHERN RAILWAY COMPANY, ET AL.

(Filed 18 May, 1921.)

1. **Carriers of Freight—Acceptance—Damages.**

   No liability attaches to the common carrier for damages to or loss or destruction of goods until its acceptance thereof is legally established. The distinction is observed when a penalty is sought for failure to make shipment.

2. **Same—Evidence—Instructions—Verdict Directing—Custom.**

   Where the custom at the carrier's station is relied on to prove its acceptance of a carload of lumber placed on its right of way for shipment, testimony of the plaintiff's agent that in accordance therewith the local agent of the carrier told him he would get a car for it as soon as he could, and the lumber was placed where the carrier's agent told him, who then accepted it, saying he would get at it as soon as he could, and this was before the occurrence of a fire destroying the property, causing the damages in suit: *Held,* the acceptance of the order for a car and the acceptance of the goods are two different things, and an instruction to the jury if they believed the evidence to answer the issue in the affirmative is reversible error, the determination thereof being for the jury, under a proper instruction.

APPEAL by defendant from *Lane, J.,* at September Term, 1920, of ROWAN.

Civil action to recover of defendant, as a common carrier, (1) damages for the loss of a carload of lumber belonging to plaintiffs; and (2) for an alleged negligent burning of same.

Plaintiffs, who are lumber dealers, undertook to ship some lumber from Elmwood, N. C., to the Danville Lumber Company, Danville, Va., in the summer of 1918, over the defendant's railroad. The particular property in controversy, which was destroyed by fire, was placed and stacked on the defendant's right of way, where it remained for a month or longer, awaiting the arrival of a car, and was destroyed by fire while thus stacked on the right of way of the Southern Railway Company at Elmwood station.

The evidence was conflicting as to whether there had been a delivery to and acceptance by the common carrier of the goods for shipment

under the established manner of dealing between the parties.    Touching this question, C. A. Brown, one of the plaintiffs, testified: "When I got an order for lumber I would have it hauled to the siding and order a car, and the next thing would be to load it.    Then I would go to the agent and get a bill of lading.    There was nothing to hinder me from moving the lumber away from the siding.    If I had had a customer I could have sold the lumber, and he would have had a right to move it away at the time.    It was my lumber as long as it was lying there at the siding.    It is the custom when a shipment is made to place the goods in the car and then go to the agent and turn it over to him.    This lumber was worth $500."

C. D. Crouch, witness for plaintiffs, testified: "I ordered the car from Mr. Shell, defendant's agent, three or four days after 30 July. Shell told me that he would get a car as soon as he could.    He showed me where to place the lumber and I placed it where he told me.    I told him it was a carload of lumber.    The agent was present when I was delivering it, and he accepted the order for the car, and said that he would get it as soon as he could.    This was some time before the fire.    I continued to haul other lumber there."

The court charged the jury if they believed the evidence, as testified to by the witnesses, to answer the first issue "Yes," the second issue "No," and the third issue "$500."

Under this instruction the jury returned the following verdict:

"1. Is defendant, John Barton Payne, Director General, as agent Southern Railway Company, liable as common carrier to plaintiff for the loss of the lumber alleged in the complaint?    Answer: 'Yes.'

"2. Was plaintiff's lumber burned and damaged by the negligence of the defendant John Barton Payne, Director General, as agent of the Southern Railway Company, as alleged in the complaint?    Answer: 'No.'

"3. What damage, if any, is plaintiff entitled to recover?    Answer: '$500, and interest from 9 September, 1918.' "

. From a judgment in favor of the plaintiffs, defendant appealed.

*B. B. Miller and Clement & Clement for plaintiffs.*
*Linn & Linn for defendant.*

STACY, J.    Upon the record, we think the first issue should have been submitted to the jury under a different instruction.    The liability of a common carrier of goods, as carrier, attaches only after acceptance and receipt of freight by it for shipment.    *Basnight v. R. R.,* 111 N. C., 592; *Wells v. R. R.,* 51 N. C., 47; 10 C. J., 231.

The case of *Bell v. R. R.*, 163 N. C., 180, chiefly relied on by plaintiffs, was an action against the railroad for failure to furnish cars within a reasonable time as required by the statute. But the suit at bar is not to recover the statutory penalty for failure to make shipment, but for the value of the lumber destroyed.

There was evidence on behalf of plaintiffs tending to show the manner and custom of shipping lumber from Elmwood station as follows: "It is the custom when a shipment is made to place the goods in the car and then go to the agent and turn it over to him." And again the witness Crouch testified: "The defendant's agent was present when I was delivering the lumber, and he accepted the order for the car and said that he would get it as soon as he could."

It will be observed that accepting an order for a car and accepting lumber for shipment are two different things. The one does not establish the relation of carrier and shipper, while the other ordinarily does. Furthermore, there was evidence tending to show that the shipment had not been turned over to defendant's agent at the time of the fire. Hence, in the present state of the record, we think the case must be retried and the issues submitted to another jury.

New trial.